UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMILY YATES,<br><br>            Plaintiff(s),<br><br>  v.<br><br>NORTHWEST BARRICADE AND SIGNS, et al.,<br><br>            Defendant(s). | CASE NO. C22-1518-KKE<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

In December 2021, while Plaintiff Emily Yates was employed by one or both of the Defendants, Northwest Flagging ("Flagging") and Northwest Barricade & Signs ("Barricade"), her son underwent surgery and Yates requested leave to care for him while he recuperated. Her leave request was approved, and Defendants subsequently terminated Yates's employment in early January 2022. Yates filed this lawsuit against Defendants, alleging that her termination violated the Family Medical Leave Act ("FLMA"), the Washington Law Against Discrimination, and Washington public policy, and to request unpaid wages. Dkt. Nos. 1, 5, 20.

Defendants filed a motion for summary judgment on Yates's claims, which the Court denied without prejudice to refiling with additional documentation. Dkt. Nos. 42, 81. Defendants later filed a renewed motion for summary judgment, and Yates abandoned some of her claims in response to that motion. Dkt. Nos. 84, 87.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

Because the Court finds that Defendants have presented sufficient unrebutted evidence indicating that Yates was terminated for reasons unrelated to her use of leave, Defendants are entitled to summary judgment on Yates's remaining claims related to her termination. And because Yates has failed to provide any evidence to support her claims that she is entitled to additional unpaid wages, beyond those Defendants have already provided, her wage claims also fail. The Court will therefore grant Defendants' motion in its entirety.

### I. BACKGROUND

Yates applied to work for Flagging as a flagger in October 2020 and started working that same month. Dkt. No. 88 ¶¶ 2, 4; *id*. at 9–12. Around November 23, 2021, Yates asked Stefani Kerr, an employee of Flagging and Barricade, how to request leave to take care of her son. *Id*. at 14. On December 6, 2021, Yates and her medical provider completed a form under Washington's Paid Family Medical Leave Act ("PFMLA") to request leave from December 28, 2021, through January 4, 2022.[1] *Id*. at 23–24.

On December 6, 2021, Kerr emailed Kristi Michaels, a supervisor at Flagging and Barricade, indicating that Yates had requested "3–6 weeks off" of work and had completed "FMLA paperwork." Dkt. No. 88 at 19. Yates claims that she did not receive any response to her December 6 submission, and texted "Defendants" on December 23 to ask whether her leave was approved, and did not immediately hear back. *Id*. ¶ 11. Yates contends that Kerr told her on December 31 that her request would have to be approved by either Michaels or Jera Kane, CEO of both Defendants. *Id*. ¶¶ 11, 13.

---

[1] Although Yates signed the form on December 6, 2021, and states that she gave it to Defendants on that day, her provider's signature authorizing the leave is dated December 27, 2021. Dkt. No. 88 at 17.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

On January 7, 2022, Yates and her then-boyfriend received a text message from Kane, that reads in its entirety:

> Good morning….. I wanted to let you know that as of today Northwest flagging and barricade has decided to part ways with you guys as employees…. Emily im not sure if anyone has responded to your sick time message but you did get the sick time you requested… if you have any nw property please return it to Moses location. Thank you for your loyalty in 2021 and best wishes to you both moving forward.

Dkt. No. 88 at 26.

Yates then received a January 25, 2022 notice from Washington's Employment Security Department stating that her application for PFMLA benefits was approved to begin December 28, 2021, and run through January 8, 2022.[2] Dkt. No. 88 at 28–31.

In April 2022, Yates filed a complaint for unpaid wages with Washington's Department of Labor & Industries ("L&I"), which found that Flagging owed Yates $2,053.08 in unpaid wages. *See* Dkt. No. 88 at 39–42, 44–45. Flagging remitted that amount in a check to Yates via L&I. *See id*. at 44–45. Yates refused to cash the check because she contends that Flagging owes her more than $17,500 in unpaid wages, plus treble damages. *See id*. ¶ 17.

Yates filed this lawsuit to challenge her termination and to dispute the amount of wages owed. *See* Dkt. No. 20. Defendants' renewed motion for summary judgment is now ripe for resolution. Dkt. No. 84.

## II.  ANALYSIS

### A.  Legal Standards on Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] Yates subsequently filed paperwork to request an extension of her leave benefits through March 4, 2022, and that request was also approved. Dkt. No. 88 at 33, 35.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

judgment as a matter of law." A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the nonmoving party opposing summary judgment would have the burden of proof at trial, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

**B.    Yates's Claim for Interference Fails as a Matter of Law.**

Yates's operative complaint alleges that "[b]y discharging [her] while she was on FMLA leave, [Defendants] denied Yates her right to return to work as guaranteed by the FMLA." Dkt. No. 20 ¶ 5.2. Yates also alleges that her termination violates Washington's public policy because an employer should not discharge, discriminate, or retaliate against an employee for taking leave to care for an ill family member. *Id.* ¶¶ 7.1–7.4.

Although the parties offer varying definitions of an FMLA interference claim in their briefing (*see* Dkt. No. 84 at 11, Dkt. No. 87 at 15–20, Dkt. No. 89 at 9), a district court in this

circuit recently defined the elements of an FMLA interference claim in the context of a summary judgment motion:

> Under 29 U.S.C. § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise" of an employee's FMLA rights. "For an interference claim to survive summary judgment, an employee must show a triable issue of fact exists as to whether her employer impermissibly considered her FMLA leave in an adverse employment action against her." *Newell v. Arizona Bd. of Regents*, 2020 WL 1694735, at *4 (D. Ariz. Apr. 7, 2020). The Ninth Circuit does not apply the *McDonnell Douglas* burden-shifting framework to interference claims under the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Thus, to survive summary judgment, Plaintiff need only make a *prima facie* showing that: (1) she took FMLA-protected leave; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her FMLA leave. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146–47 (3rd Cir. 2004) (applying the *Bachelder* approach). "An employee can prove an interference claim 'by using either direct or circumstantial evidence, or both.'" *Martin v. Arise Inc.*, 2023 WL 4237332, at *6 (D. Ariz. June 28, 2023) (citation omitted).

*Kelley v. Jewish Voice Ministries Int'l*, No. CV-23-00353-PHX-SPL, 2024 WL 4416978, at *4 (D. Ariz. Oct. 4, 2024); *see also Zsenyuk v. City of Carson*, 99 F. App'x 794, 796 (9th Cir. 2004) (setting out the same three elements of an FMLA interference claim). Some cases characterize the third element as requiring a plaintiff to show that his or her employer considered the employee's use of FMLA leave as a "negative factor" in the adverse action. *See, e.g.*, *Rouse v. Wynn Las Vegas, LLC*, 829 F. App'x 746, 748 (9th Cir. 2020) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001)).

To survive summary judgment, Yates must therefore make a *prima facie* showing on three elements: (1) she took FMLA-protected leave; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her FMLA leave.

    1.    *The Court Assumes the FMLA/PFMLA Applies to Defendants and That Yates Was Entitled to Some Benefit Under the FMLA/PFMLA.*

As to the first element—whether Yates took protected leave—Defendants concede that Yates requested FMLA leave (Dkt. No. 84 at 8), and it is not disputed that Yates's request for

leave was granted.³  Defendants' motion argues that Yates was not entitled to take FMLA leave or eligible for job protection under the PFMLA in the first place, contending that Yates was not entitled to those benefits under the FMLA/PFMLA because, as an employer of fewer than 50 people, Flagging is exempt from the FMLA and certain provisions of the PFMLA.  Dkt. No. 84 at 7 (citing 29 U.S.C. § 2611(2)(B)(ii), WASH. REV. CODE § 50A.35.010(5)(a)), 11.  Therefore, Defendants argue that Yates cannot make out the first element of her interference claim because she has not shown that she was entitled to leave under the FMLA or job protection under the PFMLA.  *Id*. at 11.

Yates has, however, submitted evidence suggesting that Flagging and Barricade should be considered joint employers, such that their number of employees should be added together.  *See* 29 C.F.R. § 825.106(a) (defining joint employers for FMLA purposes).  In a declaration, Yates states that she first reported for duty at a Barricade location, was the "lead worker" at Barricade, was supervised by an employee of both Defendants, and visited Barricade on most of her workdays to pick up a truck.  Dkt. No. 88 ¶¶ 2, 4, 6, 8.  Yates also emphasizes that the termination text message that she received from the CEO of both Defendants stated that Flagging *and* Barricade were "parting ways" with Yates as an employee.  *See id*. at 26.

In order to determine whether two employers should be considered jointly, the Court is directed to look at the totality of the relationship between the two employers, with attention to

---

³ Throughout her complaint and opposition briefing, Yates conflates the FMLA and the PFMLA.  The record indicates that Yates applied for leave under the PFMLA and that her request was approved by Washington's Employment Security Department.  Dkt. No. 88 at 23–24, 28–31.  The record further suggests that Defendants also refer to the FMLA and PFMLA interchangeably to some extent as well.  *See, e.g.*, Dkt. No. 84 at 4 (referencing Yates's request for "FMLA" leave).  The PFMLA "mirrors its federal counterpart"—the FMLA—and courts construe the PFMLA with reference to the FMLA.  *Mooney v. Roller Bearing Co. of Am., Inc.*, No. C20-01030-LK, 2022 WL 1014904, at *21 (W.D. Wash. Apr. 5, 2022) (quoting *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013)).  Whether or not Yates was entitled to benefits under the FMLA/PFMLA, her request for leave was granted and for the purposes of resolving this motion on the record before it, the Court construes all inferences in Yates's favor to assume that Yates took leave protected by the FMLA/PFMLA and/or was entitled to job protection under the PFMLA.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

factors such as which employer hired or fired, kept employment records, set work schedules, determined work conditions, or supervised or controlled the employees. *See Moreau v. Air France*, 356 F.3d 942, 950–53 (9th Cir. 2004). Yates's evidence suggests that both Flagging and Barricade exerted some degree of control over her work conditions, and that she was treated as an employee of both companies for purposes of termination, equipment, and supervision.

Construing the evidence in the light most favorable to Yates, Flagging and Barricade could be considered joint employers, and the Court thus combines their number of employees together to determine whether they satisfy the numerosity requirement of the FMLA/PFMLA. Because the total number of employees of Flagging and Barricade totaled at least 50 at times relevant to this case, the Court finds that Yates has made a sufficient showing that she was entitled to either FMLA leave or PFMLA job protection, for purposes of the first element of her interference claim.[4] *See* Dkt. No. 85-1 at 2, 31 (documents listing 33 Flagging employees and 17 Barricade employees, in December 2021).[5]

### 2. *Yates Suffered an Adverse Employment Action When She Was Terminated.*

The parties do not dispute that Yates can satisfy the second element, because it is clear that Yates's termination constitutes an adverse employment action.

---

[4] Although Defendants moved to strike specific paragraphs of declarations filed in support of Yates's opposition brief (Dkt. No. 89 at 3) on this issue, the Court did not rely on those paragraphs in resolving Defendants' motion. The motion to strike is therefore DENIED as moot.

[5] The evidence submitted by Defendants does not contain geographical information that would allow the Court to determine whether they employed 50 employees within 75 miles of Yates's job site, and this information would be relevant to a determination of whether the FMLA applies. 29 U.S.C. § 2611(2)(B)(ii). For purposes of this motion, because there is no specific evidence to the contrary in the record, the Court assumes that the employees listed by Defendants all work within 75 miles of Yates's job site. The Court acknowledges, however, that Kane appeared to distinguish between employees of Defendants on the west side of Washington and the east side of Washington, which suggests that not all of Defendants' employees were located within 75 miles of Yates's job site. *See* Dkt. No. 44-1 at 13. Because the Court assumes the FMLA applies for purposes of resolving Defendants' motion, the Court need not definitively resolve the geographic issue.

> 3. *Yates Has Not Met Her Burden to Show That Her Use of Leave Was Causally Related to Her Termination.*

Finding that Yates has made a sufficient showing on the first two elements of her interference claim, the Court turns to the third element: whether Yates has shown that her use of FMLA/PFMLA leave was causally related to her termination. The Court concludes she has failed to carry her burden on this element.

Defendants argue that Yates cannot show any connection between her use of leave and her termination, providing evidence indicating that when Defendants' owner and founder died in December 2021, multiple employees were subsequently terminated as Defendants required reorganization and restructuring to ensure viability under new leadership. *See* Dkt. No. 84 at 8–10 (referencing Dkt. No. 43 ¶ 9, Dkt. No. 44-1 at 14–17). In the months following their owner's death, Defendants closed certain locations and even further reduced their number of employees in response to a statewide concrete strike that began in November 2021 and was not resolved until April 2022. *See* Dkt. No. 69-1 at 2–4.

Yates contends that there is a question of fact as to whether her termination was influenced by her use of leave, and that if it was, it violated the FMLA/PFMLA as well as public policy. Dkt. No. 87 at 15–21. Yates cites no evidence, direct or circumstantial, to suggest that her leave was a factor in her termination, however. She appears to rely solely on the temporal proximity of her leave to her termination, but this alone does not suggest causation, particularly in light of the Defendants' evidence suggesting a number of reasons unrelated to Yates's use of leave to explain why Defendants terminated multiple employees including Yates. Although some courts have found temporal proximity to be sufficient circumstantial evidence of a causal link between leave and an adverse action, "temporal proximity may be undermined or negated if there are intervening events that gave rise to an adverse employment action." *Baird v. Leidos, Inc.*, No. 22cv0060-LL-

BGS, 2024 WL 584446, at *6 (S.D. Cal. Feb. 13, 2024); *see also Zsenyuk*, 99 F. App'x at 797 (affirming summary judgment on interference claim for lack of causation despite temporal proximity between leave and termination, citing intervening incidents that occurred just before a plaintiff's termination); *Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 648 (9th Cir. 2016) (affirming summary judgment, finding that although "[s]uspicious timing may be circumstantial evidence of a causal link between exercise of FMLA rights and an adverse employment action," temporal proximity alone was outweighed by "overwhelming evidence" that employee's termination was only coincidentally close in time to his FMLA leave).

Defendants' evidence indicating that Yates's termination was unrelated to her use of leave is unrebutted, and under these circumstances temporal proximity alone is insufficient to withstand Defendants' motion for summary judgment. The intervening events related to the death of Defendants' owner and founder, compounded by a monthslong concrete strike depleting flagging jobs for Defendants, undermine any hint of causation based solely on temporal proximity.

Because Yates has failed to make a *prima facie* showing as to the causation element of her interference claim, the Court finds that Defendants are entitled to judgment as a matter of law on Yates's claims that her termination violated the FMLA/PFMLA.

**C.    Yates's Wrongful Discharge Claim Fails for the Same Reasons as the Interference Claim.**

In order to show that her termination violated Washington's public policy, Yates must make a *prima facie* showing that her discharge was wrongful because it was motivated by reasons that conflict with a clear mandate of public policy, and that her conduct that was protected by public policy was a significant factor in the decision to terminate her. *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 384–85 (Wash. Ct. App. 2020). If an employee is terminated for

exercising a legal right or privilege, this termination could support a claim for wrongful discharge. *Id.* at 385.

The parties agree that Yates's claims for interference and wrongful discharge rise and fall together. *See* Dkt. No. 84 at 13, Dkt. No. 87 at 20–21. Because Yates's claim for FMLA/PFMLA interference fails for the reasons previously stated, and she has not alleged that her termination conflicts with any other clear mandate of public policy, her claim for wrongful discharge fails as a matter of law.

### D.  Yates Has Failed to Show a Question of Fact on Her Wage Claims.

Defendants argue that Yates's claims for unpaid overtime wages under federal and state law (Dkt. No. 20 ¶¶ 8.1–9.3) are moot because although Defendants concede that they had originally failed to pay Yates all wages owed, they have, in response to Yates's wage complaint to L&I, paid Yates all that L&I found that she was owed. Dkt. No. 84 at 13–14. Defendants contend that in light of their payment for $2,053.08 for unpaid prevailing wages and interest, she can no longer sue Defendants for those same unpaid wages. Dkt. No. 89 at 12 (citing *Marshall v. A&M Consol. Indep. Sch. Dist.*, 605 F.2d 186, 190 (5th Cir. 1979)).

Yates acknowledges that Defendants have provided her with the amount that L&I found she was owed, but contends that she nonetheless has calculated that she is owed more than $17,500 and that this amount should be trebled. *See* Dkt. No. 88 at 17. Yates offers no evidence or even calculations to support her assertion, and this failure is fatal. Because there is no evidence before the Court suggesting that L&I's calculation is incorrect or that Defendants have not, at this point, paid all wages owed, Yates has failed to meet her burden to show that her wage claims should proceed to a jury.

Furthermore, although Yates requests an award of attorney's fees "after she shows that she was paid less in wages than she was owed" (Dkt. No. 87 at 21), the time to make that showing was

in opposition to summary judgment, and she failed to do so. Accordingly, Yates's claims for wages and attorney's fees are dismissed.

### III. CONCLUSION

For these reasons, the Court finds that Yates's claims fail as a matter of law. The Court GRANTS Defendants' renewed motion for summary judgment. Dkt. No. 84.

Dated this 7th day of November, 2024.

Kymberly K. Evanson
United States District Judge